JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

D.C., et al.

      Plaintiffs,

v.

MOLOMBO THILLOT, et al.,

      Defendants.

Case No. 2:20-cv-11765-SK

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE**

## I.

This personal injury and wrongful death action stems from a set of deadly crashes two years ago on Interstate 80 in the state of Wyoming. Shortly before midnight on March 6, 2019, a semi-truck owned by Defendant New Prime (and driven by two of its employees named as individual Defendants here) was traveling on the freeway in alleged icy conditions when it collided with a minivan driven by Marco Carr. The minivan's passengers were his partner Rebecca Nowlin, who was nine months pregnant, and the couples' five minor children. While stalled on the freeway, the minivan was then hit by another semi-truck owned by Defendants Combined Transport and Blackwell Consolidation (referred to collectively with their named driver as the Combined Transport Defendants). Carr, Nowlin, her unborn child, and one minor named E.C. died from fatal injuries they sustained in the crashes. The other four minors—D.C., H.C., A.C., and E.S.—survived but with serious injuries,

including permanent brain damage and other physical disabilities for at least two minors who now live in California with their guardians.

This tragic collision led to two federal lawsuits in two states, the first one here in California that Defendant New Prime removed from state court, and a later one in Wyoming District Court against the Combined Transport Defendants that remains pending there in the early pretrial stage. Except for the Estate of Marco Carr, which is a named Plaintiff here in the California action only, all the other decedents' estates are named in both parallel actions (though with different administrators). The surviving minors, on the other hand, are split between the two states' actions with different guardians: minors E.S. and A.C.—previously nominal defendants here—are now named only as plaintiffs (and renamed E.N. and A.N.) in Wyoming alone, while minors D.C. and H.C. are named only among the Plaintiffs in this action.

The issue now before the Court is whether these entangled suits should be joined as related cases in the District of Wyoming—as the Combined Transport Defendants want—or whether they should proceed simultaneously yet separately in two districts—as Plaintiffs here want. Those are the only choices, as no party has tried or is trying to have the Wyoming action moved to California. And as is often the case in these forum disputes, there is no easy or ideal answer. On balance, though, the relevant factors ultimately tip in favor of joining the actions in the state where the deadly collisions happened. If nothing else, all four surviving minors should have the benefit of litigating in a single forum for a consistent outcome. Thus, in the exercise of its discretion, the Court GRANTS the Combined Transport Defendants' motion to transfer venue under 28 U.S.C. § 1404(a) to the District of Wyoming. (ECF 28, 30).

## II.

To secure discretionary transfer of venue under § 1404(a), Defendants[1] must first show that this case could have been brought in the District of Wyoming. *See Hatch v. Reliance Ins. Co.,* 758 F.2d 409, 414 (9th Cir. 1985). They have made that threshold showing. *See Metz v. U.S. Life Ins. Co. City of New York*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009). The parties do not dispute—nor could they—that the District of Wyoming would have both subject matter jurisdiction over this removed diversity suit and personal jurisdiction over Defendants. (ECF 30-1 at 13). Nor can any party deny that venue would be proper in Wyoming federal court since the accident occurred in that court's state. *See* 28 U.S.C. § 1391(b). Contrary to Plaintiffs' argument (ECF 34 at 10), Defendants had no need to allege improper venue as an affirmative defense in their answer here to seek transfer of venue. What Defendants want is not dismissal for improper venue in this district, *see* 28 U.S.C. § 1406(a)—which they could not successfully obtain anyway. *See* 28 U.S.C. § 1441(a) (providing that for removed actions, venue is proper in federal court that geographically embraces the state court in which the case was filed). Instead, they seek discretionary transfer under § 1404(a) to a venue that is (in their eyes at least) more convenient—even though venue remains equally proper here. (ECF 30-1 at 2, 6).

Defendants' motion, then, turns on whether transfer should be granted—in the Court's discretion—based on the interests of justice. *See Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–99 (9th Cir. 2000).

---

[1] The Court is told that New Prime and its named driver join in—or at least do not oppose—the Combined Transport Defendants' motion to transfer. (ECF 30-1 at 10). It is now too late anyway for the New Prime Defendants to oppose, as they have had ample time to make any contrary position known.

Whether the interests of justice support transfer depends on a multitude of non-exhaustive factors, including Plaintiffs' original choice of forum, the convenience of the parties and witnesses, the parties' respective contacts with the transferee state, the court most familiar with the governing law, the availability of compulsory process for non-party witnesses, the ease of access to sources of proof, and the need to avoid multiplicity of similar litigation. *See id.*; *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990). For that overall discretionary assessment, some factors favor Plaintiffs and others are neutral, but most ultimately support the transfer that Defendants seek.

The factor that tilts most for Plaintiffs is the convenience of the surviving minors who live here. Their physical and medical conditions would undeniably make travel to Wyoming difficult, thus weighing in favor of keeping their action local. *See California Writer's Club v. Sonders*, WL 4595020, at *12 (N.D. Cal. Oct. 3, 2011); *Cohen v. State Farm & Cas. Co.*, WL 2500729, at *5 (E.D. Cal. Aug. 14, 2009). Minor D.C., for instance, requires total assistance from his elderly guardian with virtually all daily activities and medical needs. (ECF 34-7 at 2; ECF 34-3 at 2). Both D.C. and H.C. also have serious brain injuries. (ECF 34-7 at 3; ECF 34-8 at 3). So travel for litigation out of state would unquestionably be burdensome on these minors and their guardians. (ECF 34-7 at 3).[2]

---

[2] Plaintiffs also point to the minors' compromised respiratory and immune systems as another reason to keep their case here given the Covid-19 pandemic. (ECF 34-7 at 2). But that only raises the question of whether the minors—no matter where this case is litigated by adult guardians, administrators, and attorneys—should be exposed to much day-to-day litigation activities at all, much less in person. If there were ever a case for remote depositions, Zoom hearings, and possibly even prerecorded trial testimony, this one would surely qualify. And neither party presents any convincing evidence that the surviving minors—in either the California or Wyoming action—would even be critical witnesses at all given their young ages at the time of the accident. Nor do they explain how they could competently testify given their brain injuries. For now, though, the Court assumes that the minors' roles in the litigation weigh against transfer.

Plaintiffs' choice of forum also disfavors transfer.  Normally, a "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).  But Plaintiffs' choice of forum lost some of its weight when Defendant New Prime removed the case to federal court, thereby depriving them of their originally chosen—state court—forum.  *See Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 166 (S.D. Ohio 2012); *Actmedia, Inc. v. Ferrante*, 623 F. Supp. 42, 44 (S.D.N.Y. 1985).  Still, the case remains in California and is governed by California's choice of law rules.  *See Sarver v. Chartier*, 813 F.3d 891, 897 (9th Cir. 2016) (recognizing that federal courts sitting in diversity must apply the choice of law rules of the state in which they sit). And while Defendants are not domiciled in California, they are not domiciled in Wyoming either.  (ECF 30-1 at 18; ECF 1-1 at 4-6). Defendants are residents of Missouri, Nevada, and Oregon, so litigation in one foreign state should not be appreciably more or less difficult than it would be in another foreign state.  (ECF 34 at 12).  Thus, Plaintiffs' overall choice to litigate in California—even if not initially in federal court—weighs marginally against transfer to Wyoming.

Several other transfer factors, however, decidedly favor neither side. For starters, neither forum appears to have any distinct advantage in familiarity with the substantive law to be applied.  Both sides effectively concede this, as neither offers any convincing view one way or the other. (ECF 34 at 26; ECF 46 at 4; ECF 47 at 2).  This equivocation is most likely because both federal courts would have to apply California's choice of law rules as a threshold matter.  *See Sarver*, 813 F.3d at 897; *Ferens,* 494 U.S. at 531.  And under California's "governmental interest" choice of law

matrix, it is not at all apparent which state's substantive laws would ultimately apply to this action.  *See Paulsen v. CNF Inc.,* 559 F.3d 1061, 1080 (9th Cir. 2009); *Abogados v. AT&T, Inc.,* 223 F.3d 932, 934 (9th Cir. 2000).  So this factor remains a neutral one.

Likewise, the convenience of the witnesses and access to evidence are mostly a wash, as well.  All those who responded to the fatal accident— highway patrol officers, sheriff deputies, first responders, hospital staff, coroner, and towing company—are in Wyoming.  (ECF 30-1 at 19; ECF 38 at 13-14).  But the minors' treating physicians and guardians, who may need to testify about their injuries and relationships with the decedents or their surviving heirs, are here in California.  (ECF 34 at 16).  Choosing either forum, then, "would merely shift rather than eliminate the inconvenience" to one set of witnesses or the other.  *Decker Coal Co.,* 805 F.2d at 843.  Similarly, it is conceivable that the parties, witnesses, or experts might need access to the scene of the accident in Wyoming.  (ECF 38 at 19-20; ECF 34 at 20).  But as noted already, none of the parties in this action are from Wyoming, so the collision site is more or less equally inaccessible to everyone without considerable travel, planning, and coordination.  And the practice of bringing a jury to the accident site is now generally uncommon.  *See Vassallo v. Niedermeyer*, 495 F. Supp. 757, 760 (S.D.N.Y. 1980).  So these factors, too, move the needle hardly at all.

On the other hand, "the availability of compulsory process to compel attendance of non-party witnesses in the transferee district favors transfer." *Eclipse IP LLC v. Volkswagen Grp. of Am., Inc.*, WL 9935572, at *4 (C.D. Cal. May 10, 2013).  Federal courts may compel witnesses by subpoena power only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P.

45(c)(1)(A).  The bevy of non-party witnesses in Wyoming who either saw or responded to the highway collision are thus outside the subpoena power of this Court.  (ECF 38 at 13-14).  And although the minors' treating doctors in California may also be non-party witnesses, they are fewer in number and easier to reach given their regularly scheduled medical visits.  (ECF 34-7 at 2; ECF 34-10 at 2).

For similar reasons, it is impossible to overlook that Wyoming is the site of the collisions at the very heart of this whole case.  All the documentary and testimonial evidence will therefore necessarily concentrate on what happened before, during, and after those deadly crashes on a freeway in Wyoming.  Nothing in California will exert that kind of evidentiary gravity.  True, none of the parties have any overwhelming contacts with Wyoming.  (*See* ECF 1-1 at 4; ECF 34 at 18-19).  By all accounts, everyone was passing through the state when the deadly crashes happened.  (ECF 34 at 23).  But as the site of the accident, Wyoming is also the only common place where all the parties' divergent interests intersect somehow.  Thus, the nexus between Wyoming and the seminal disputed event here favors transfer.

Finally, all else equal, the important need to avoid multiplicity of litigation breaks any tie in favor of transfer to Wyoming.  Although Plaintiffs are correct that they filed their suit in California first (ECF 34 at 18), only the Wyoming District Court can invoke the "first-to-file" doctrine to transfer, dismiss, or stay the later-filed case in that court.  *See Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015).  Yet no one has presented any evidence to suggest that the district court in Wyoming is even considering that option, whether on its own or by motion.  On the other hand, this Court has to resolve the transfer

motion that Defendants have filed here. And in that procedural posture, this Court must consider the need to "avoid multiplicity of litigation resulting from a single transaction or event." *Avalon Glass & Mirror Co. v. Elec. Mirror, LLC*, WL 7217579, at *3 (C.D. Cal. Dec. 12, 2016). Allowing "two cases involving precisely the same issues" to simultaneously proceed in "different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). Thus, "many courts have transferred to a forum in which other actions arising from the same transaction or event, or which were otherwise related, were pending." *Avalon Glass & Mirror Co.,* WL 7217579, at *3.

If nothing else, the untoward possibility of inconsistent outcomes is a closely related reason why one court should handle both cases. All four surviving minors were traveling in the same car at the same time when the deadly collisions happened. It makes little sense, then, to have two of those minors litigate their personal injury actions in one state and the other two litigate their actions in another more than a thousand miles apart. (And to reiterate, the only choice on offer is to join the two cases in Wyoming or keep them splintered between two states; the option to consolidate in California does not exist.) Any fair resolution of these minors' claims, as well as of the decedents' wrongful death actions, should be consistent overall; and the best chance for that—whether by global settlement or jury verdict—is to have all the cases litigated in a single forum before one judge in the same state. As it stands now, the Wyoming District Court is the only place that can happen.

### III.

For all these reasons, Defendants' motion to transfer this action to the Wyoming District Court (ECF 28, 30) is **GRANTED**.[3]  The Clerk is instructed to transfer this case and all related files to the District of Wyoming in Case No. 2:20-cv-00165-ABJ.

**IT IS SO ORDERED.**

DATED: May 12, 2021

_____
STEVE KIM
U.S. MAGISTRATE JUDGE

---

[3] Because the Court relied on no information uniquely found in the specially appearing Nominal Defendants' brief on choice of law (ECF 45), Plaintiffs' motion to strike that brief (ECF 48) is **DENIED** as moot.  And because the Court based none of its decision on any material evidence genuinely in dispute, Defendants' evidentiary objections (ECF 40; ECF 42) are also **DENIED** as moot.